# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

MARY MCCLEOD,

    Plaintiff,

v.

NATIONAL RAILROAD
PASSENGER CORPORATION
d/b/a AMTRAK NATIONAL
PASSENGER CORP. (AMTRAK),

    Defendant.

Case No. CV413-057

## ORDER

Plaintiff Mary McCleod moves to compel defendant National Railroad Passenger Corporation (Amtrak) to disclose railroad passenger information to her. Doc. 43. She brought this personal injury case against Amtrak over claimed injuries she suffered while riding an Amtrak train. Doc. 11 at 2.[1] Aged 75 when she boarded, she had "pre-existing difficulties in negotiating steps and ambulation due to knee pain and arthritic changes." *Id.* at 3. She had informed Amtrak of her condition, and Amtrak wheeled her onto its train and otherwise assisted her, but it

---

[1] For the purpose of this Order, the Court is accepting as true the factual assertions she has made in the parties' Joint Status Report. Doc. 11.

provided no warnings or instruction on how to obtain rest room assistance once there. *Id.* at 4. "She was also not informed that the car in which she was placed was not specially equipped to handle disabled or handicapped passengers as had been promised." *Id.*

"In the early morning hours of March 9, 2011, [McCleod] determined that she needed to go to the rest room, which was located some distance from her seat, and in an area devoid of handrails. There was no attendant in the car and no assistance was available so [she had] to walk, unassisted, to the rest room." Doc. 11 at 4. As plaintiff "neared the rest room, the car bumped or lurched causing [her] to lose her balance and fall to the floor. At that location, there were no available handrails to grab to prevent her from falling." *Id.* at 5.

McCleod raises "claims for negligence, a violation of American with Disabilities Act [(ADA)] and Rehabilitation Act [(RA)] resulting in her falling and fracturing her right femur as well as injuring her neck, right arm, head, low back, knee and other injuries. . . . Plaintiff seeks general and special damages including past and future mental and physical pain and suffering and past and future medical expenses." Doc. 11 at 2.

Moving for summary judgment, Amtrak asserts that McCleod's need to use its train's restroom may have been urgent but it was because she was incontinent, yet she did *not* inform Amtrak of that fact, much less seek its crew's assistance. Doc. 37 at 1-2. Instead, she attempted to walk from her seat to the restroom but fell and injured herself. *Id.* at 2. Her case, Amtrak argues, must be dismissed because she can show neither negligence *per se* nor any ADA or RA violations as a matter of law. *Id.* at 2-23. That summary judgment motion is before the district judge, while plaintiff's discovery motion has been referred.

In her motion to compel, McCleod contends that she document-requested, per Fed. R. Civ. P. 34, a copy of the train's manifest from that trip. Doc. 43 at 1. Amtrak provided her with only a passenger list stripped of contact data. *Id.* at 2. Plaintiff wants the stripped data. *Id.* Amtrak insists that it is irrelevant and must be protected on privacy grounds. Doc. 65 at 1-2. Plus, "it is highly unlikely that any passenger will recall details of when and how Amtrak employees passed through a train during a trip that occurred three years ago." *Id.* at 2-3. Hence, plaintiff is on "a fishing expedition that is highly unlikely to succeed [and]

will only harm Amtrak's goodwill" with customers on whom it depends upon to purchase tickets. *Id.* at 3. Finally, plaintiff herself knows of two passenger witnesses but refuses to provide information about them; she should not, Amtrack asserts, be allowed to withhold that information for trial-ambush purposes. *Id.*[2] Worse, Amtrak has offered to "produce the contact information for the two passengers who [p]laintiff believes had some knowledge of her injury," yet McCleod has failed to identify those passengers. *Id.* at 2.

There is much to commend Amtrak's insistence that plaintiff's quest sweeps too broadly. It seems unlikely that contacting passengers years after the fact is likely to produce any useful results, and Amtrak credibly cites goodwill harm. Furthermore, plaintiff has failed to cooperate by meeting Amtrak half-way and disclosing her two passenger-witnesses; there is to be no trial by ambush here. Finally, McCleod is free to invoke Fed. R. Civ. P. 56(d) if in fact this information can reasonably be shown to affect summary judgment in her favor. Requiring her to deploy Rule 56(d) packs the extra benefit of requiring her

---

[2] Amtrak, however, does not move to compel that information, so the Court will not compel it.

4

to address Amtrak's argument that this information is moot because she cannot meet RA, ADA, and negligence *per se* legal requirements.

Still, it's not every day that a 75-year-old woman falls and injures herself in the train aisle, and it is not beyond the pale of reason to suppose that someone beyond the two passenger witnesses known to plaintiff saw the fall, and thus could confirm, for example, whether aisle railings or some other injury-preventing device would have made a difference. *See McGilvary v. Hansen*, 897 P.2d 605, 607 (Alaska 1995) (vacating, as disproportionately severe, a trial court sanction that struck the pleadings of and imposed liability upon a defendant tour bus operator in a personal injury suit where the plaintiffs requested a bus passenger list, were told none existed, then it was later discovered that the defendant operator's failure to provide the list was willful; the trial court should have considered any lesser sanction or remedy, such as a continuance of discovery and an award of costs resulting from the violation, and the discovery error did not gravely prejudice the plaintiffs, in that the requested information was eventually provided to them before the close of discovery). And "[d]uring discovery, a party must disclose 'the name

to address Amtrak's argument that this information is moot because she cannot meet RA, ADA, and negligence *per se* legal requirements.

Still, it's not every day that a 75-year-old woman falls and injures herself in the train aisle, and it is not beyond the pale of reason to suppose that someone beyond the two passenger witnesses known to plaintiff saw the fall, and thus could confirm, for example, whether aisle railings or some other injury-preventing device would have made a difference. *See McGilvary v. Hansen*, 897 P.2d 605, 607 (Alaska 1995) (vacating, as disproportionately severe, a trial court sanction that struck the pleadings of and imposed liability upon a defendant tour bus operator in a personal injury suit where the plaintiffs requested a bus passenger list, were told none existed, then it was later discovered that the defendant operator's failure to provide the list was willful; the trial court should have considered any lesser sanction or remedy, such as a continuance of discovery and an award of costs resulting from the violation, and the discovery error did not gravely prejudice the plaintiffs, in that the requested information was eventually provided to them before the close of discovery). And "[d]uring discovery, a party must disclose 'the name

and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information. . . .' Fed. R. Civ. P. 26(a)(1)(A)(i)." *Wright v. Langford*, 2014 WL 1302628 at * 7 (11th Cir. Apr. 2, 2014). To that end,

> "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." [Fed. R. Civ. P. 26(b)(1).] "[I]f there is an objection that the discovery goes beyond material relevant to the parties' claims or defenses, the Court ... become[s] involved to determine whether the discovery is relevant to the claims or defenses[.]" Fed. R. Civ. P. 26(b)(1), advisory committee's note (2000 Amendment). If it is not, the court must [then] determine "whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible." *Id.*

*Miller v. MP Global Products, LLC*, 2014 WL 1017887 at * 1 (S.D. Ala. Mar. 17, 2014) (cite omitted).

The discovery standard for relevance is quite liberal. In fact, the higher, *trial* "standard for what constitutes relevant evidence [itself] is a low one: evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed. R. Evid. 401." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002).

6

To enable litigants to garner that trial evidence, the discovery rules cast a wide net. So Rule 26, "quite simply, sets forth a *very* low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it." *Miller*, 2014 WL 1017887 at * 1 (quotes, alterations and cite omitted; emphasis added). The Court therefore grants the plaintiff's motion; Amtrak therefore shall hand over the requested information within 11 days after the date this Order is served.

Plaintiff also moves to exclude two Amtrak employees -- Jacqueline Clark and Laura Anderson -- from testifying in this case. Doc. 44. She points out that Amtrack named no expert witnesses and failed to disclose Clark and Anderson until 4 to 5 days prior to the expiration of discovery. Plaintiff's counsel then traveled from Savannah, Georgia to Washington, D.C. to depose them. *Id.* at 1. The two women then deposed that they had no personal knowledge of any matters in the case. *Id.* at 2. Indeed, they had never heard of McCleod, much less this case, until approximately one week prior to their deposition. *Id.* And during their depositions they proffered, plaintiff contends, "lay-expert" opinions in violation of Fed. R. Evid. 701's personally observed facts requirement. *Id.* Hence,

Amtrak is "proffering an expert in lay witness clothing." *Id.* at 3.

In that this motion goes to the district judge's discretion on *evidentiary*, rather than *discovery* matters, it was improperly referred to the undersigned. Hence, it is now deferred to the district judge, who may well just moot it while ruling on Amtrak's summary judgment motion. The same must be said for Amtrak's *Daubert* motions, docs. 39 & 41. *See Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993).

To summarize, plaintiff Mary McCleod's motion to compel (doc. 43) is **GRANTED**. Her motion to strike testimony (doc. 44) is **DEFERRED**, as are defendant Amtrak's motions to exclude expert witness testimony (docs. 39 & 41).

**SO ORDERED** this __22nd__ day of April, 2014.

/s/ JB Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA