UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARY MCCLEOD,

**Plaintiff,**

v.                          4:13-cv-57

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK
NATIONAL PASSENGER CORP.,

**Defendant.**

## ORDER

### I. INTRODUCTION

Mary McCleod brings this action against National Railroad Passenger Corporation ("Amtrak") for injuries sustained during a train trip. ECF No. 28. Amtrak filed two motions to exclude the testimony of witnesses Robert Meizinger, ECF No. 39, and Ned Einstein, ECF No. 41. For the reasons set forth below, the Court *GRANTS* both motions. McCleod filed a motion to exclude as experts two witnesses offered by Amtrak. ECF No. 44. The Court *GRANTS* this motion.

Amtrak has also filed a Motion for Summary Judgment arguing that McCleod fails to present evidence sufficient to support her causes of action. ECF No. 36. The Court *GRANTS* in part and *DENIES* in part Amtrak's motion.

### II. BACKGROUND

On March 8, 2011, Mary McCleod left Washington, D.C., on an overnight train bound for Savannah, Georgia. ECF No. 38 at 3-4. At the time, she walked with the aid of a cane or walker and suffered from incontinence. *Id.* at 1-3. An Amtrak employee assisted McCleod as she climbed into the train in Washington, and she was seated in a handicap seat near the restroom. *Id.* at 4. She did not inform any Amtrak employee about her incontinence. *Id.* at 5.

Sometime after midnight on March 9, McCleod realized that she urgently needed to use the restroom. *Id.* Seeing no Amtrak employees nearby, she left her seat in an attempt to reach the restroom on her own. *Id.* The first door she reached was locked. ECF No. 48 at 15. As she turned to try the door across the aisle, McCleod fell and injured her leg. ECF No. 37 at 6. The parties agree that the injury occurred in North Carolina. ECF Nos. 28 at 8; 37 at 19.

McCleod filed this lawsuit against Amtrak on March 6, 2013, in which she alleges three claims: negligence under North Carolina law, negligence per se on the part of Amtrak, and discrimination under the Americans with Disabilities Act ("ADA"). ECF No. 28.

### III. EXCLUSION OF WITNESSES

Federal Rule of Evidence 702 controls the admission of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). The burden of establishing the admissibility of expert testimony rests on the proponent of the testimony. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

In *Daubert*, the Supreme Court made clear that Rule 702 compels trial courts to serve as gatekeepers, determining the

admissibility of expert testimony. 509 U.S. at 589; *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The Court engages in a three-part inquiry when determining whether to admit expert testimony. The Court considers whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260.

### A. Exclusion of Robert Meizinger

Amtrak moves the Court to exclude Robert Meizinger's expert testimony. ECF No. 39. McCleod has offered Robert Meizinger as an expert witness on Amtrak, its duties to passengers with disabilities, and its violations of those duties. ECF No. 18 at 5. Amtrak argues that Meizinger's opinions are unreliable and will not assist the jury. ECF No. 40 at 4-12.

Meizinger is a "management professional" with decades of experience working for various rail companies. ECF No. 18-1 at 6. From 1999 to 2003, he served as a crew base manager for Amtrak. *Id.* He was responsible for supervision of 250 employees, management of daily safety meetings, and ensuring that the trains in his region were adequately staffed. *Id.* He regularly rode the trains under his supervision to ensure that each train employee was performing his or her duties. ECF No. 49 at 8.

Meizinger's expert testimony is improper because he proposes to give a legal conclusion about the case. McCleod has offered Meizinger to testify "in regard to the negligent failure by the employees and personnel of Amtrak." ECF No. 18 at 5. But experts may not testify as to the legal implications of conduct. *United States v. Grzybowicz*, 747 F.3d 1296, 1310 (11th Cir. 2014) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). Because the proposed testimony is a legal conclusion, it is improper. Therefore, the Court excludes Meizinger's expert testimony.

The Court acknowledges that Meizinger's experience enables him to testify competently regarding his personal knowledge of Amtrak's operations. A lay witness may testify to complex information within his or her knowledge. *See United States v. Hamaker*, 455 F.3d 1316, 1331–32 (11th Cir. 2006) (permitting the testimony of an experienced F.B.I. agent regarding complicated financial records as lay testimony). Lay testimony of this sort is admissible, "not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the [lay] witness has by virtue of his or her position in [a] business." Fed. R. Evid. 701 advisory committee's note, 2000 amend. Thus, Meizinger is qualified only as a lay witness, not as an expert witness.

### B. Exclusion of Ned Einstein

Amtrak also moves the Court to exclude Ned Einstein from testifying as an expert. ECF No. 41. McCleod has offered Ned Einstein as an expert on the ADA and its application to Amtrak's policies. ECF No. 18 at 4. Amtrak argues that Einstein is unqualified to testify to the ADA, ECF No. 42 at 9-10, and that his proposed testimony about the ADA is an inappropriate legal conclusion, *id.* at 22.

Einstein is a transportation consultant. ECF No. 55 at 2. He received a Masters of Urban and Regional Planning from George Washington University in 1975. ECF No. 18-2 at 17. He has operated his own company, Transportation Alternatives, since 1979. ECF No. 55 at 3. He has designed bus transit systems of varying sizes, ECF No. 56 at 1-2, and has written hundreds of articles on ground transportation, most often for the magazine *National Bus Trader*, *id.* at 6-18. Ninety-nine percent of his current work involves testifying as an expert witness. ECF No. 55 at 4.

Despite his experience with ground transportation, Einstein is not qualified to testify competently about the application of the ADA to intercity rail. He has insufficient experience with either intercity rail or Amtrak. Apart from a six-month stint as a piano player on a train in the 1970s, Einstein has never worked for Amtrak. ECF No. 55 at 5. He has never written about intercity rail. *Id.* at 9. He has testified in only one previous case involving intercity rail. *Id.* at 11. Thus, although his resume is replete with experience in ground transportation, Einstein has virtually no experience with train travel. His testimony as to Amtrak would therefore not be reliable.

Second, Einstein's proposed testimony that Amtrak violated the ADA constitutes an improper legal conclusion. As noted above, this is barred. *See Grzybowicz*, 747 F.3d at 1310.

Therefore, the Court excludes Einstein's expert testimony.

### C. Exclusion of Jacqueline Clark and Laura Anderson

McCleod moves the court to exclude portions of the testimony of two of Amtrak's witnesses. ECF No. 44. Specifically, she moves to exclude "any testimony" from Jacqueline Clark and Laura Anderson, "insofar as same would constitute 'expert testimony.'" *Id.* at 1. In its response, Amtrak concedes that Clark and Anderson

3

will not offer expert testimony. ECF No. 66 at 1 ("[T]he testimony of Clark and Anderson . . . does not constitute expert testimony under Rules 701 and 702 of the Federal Rules of Evidence."). Because the parties are in agreement on this issue, the Court excludes Clark and Anderson from providing expert testimony.

## IV. AMTRAK'S MOTION FOR SUMMARY JUDGMENT

Amtrak moves the Court for Summary Judgment on all claims. ECF No. 36.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008). Courts, moreover, may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

Here, the parties do not dispute what occurred. The parties agree that McCleod did not ask to remain in her wheelchair for the trip, nor did she request assistance from Amtrak after she was helped to her seat on the train. ECF No. 38 at 4. They agree that McCleod never informed anyone on the train that she suffered from incontinence. ECF No. 38 at 1. They agree that McCleod attempted to walk to the restroom on her own. *Id.* at 5. The parties also agree that McCleod fell and was injured while riding on an Amtrak train. ECF Nos. 28 at 7; 37 at 6. The parties do dispute whether these facts support legal claims.

### A. ADA Claim

McCleod alleges that Amtrak failed to make their coaches accessible to individuals in wheelchairs and also to provide accessible restrooms to such individuals in violation of the ADA. ECF No. 28 at 10-15. Amtrak argues that McCleod cannot show that she was denied its services based upon her disabilities. ECF No. 37 at 11.

When a plaintiff alleges discrimination under the ADA, he must prove three elements:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011) (citation omitted). The ADA defines

4

a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

McCleod has established that she has a disability, since it is undisputed that she had difficulty walking without assistance. *See, e.g.*, ECF No. 38 at 1–2. It is also undisputed that she suffered from incontinence. *Id.* at 1. As a result of her disabilities, she was unable to live by herself prior to her Amtrak trip. ECF No. 48 at 6.

But McCleod has failed to establish the second element of her ADA claim. She has not demonstrated that Amtrak excluded her from participation in any benefit. Instead, McCleod argues that Amtrak should have volunteered additional assistance to help her to the restroom. ECF No. 75 at 6. But the ADA does not require Amtrak to read the minds of its passengers to determine if assistance is needed. *See Katzowitz v. Long Island R.R.*, 58 F. Supp. 2d 34, 39 (E.D.N.Y. 1999) (granting summary judgment to railroad when plaintiff failed to communicate to train personnel that he required assistance); *Adiutori v. Sky Harbor Int'l Airport*, 880 F. Supp. 696, 703 (D. Ariz. 1995), *aff'd*, 103 F.3d 137 (9th Cir. 1996) ("The ADA . . . does not require that assistance be automatically given to persons like the plaintiff; it requires only that appropriate assistance be given on an as requested and on an as needed basis."). McCleod never requested assistance as she rode the train. ECF No. 38 at 4. She may not predicate liability on Amtrak's failure to predict that she might need such assistance.

The third element of an ADA claim has also not been established. Because Amtrak did not exclude McCleod from participation in any service or benefit, it cannot have excluded her due to her disabilities.

The evidence fails to establish an actionable claim under the ADA, and so the Court grants summary judgment in favor of Amtrak as to this claim.

### B. Negligence Claims

Amtrak also moves the Court for summary judgment on McCleod's negligence claim. ECF No. 37 at 21-22.

#### 1. Choice of Law

The parties agree that McCleod's injury occurred in North Carolina. ECF Nos. 28 at 8; 37 at 19. "In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006) (citing *McGow v. McCurry*, 421 F.3d 1207, 1217 (11th Cir. 2005)). The forum state for this action—Georgia— follows the rule of *lex loci delicti*. *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413, 419 (Ga. 2005). That rule provides that tort actions are governed by the substantive law of the state in which the tort was committed. *Id.* at 414. Therefore, because the parties agree that McCleod's injuries occurred in North Carolina, ECF Nos. 28 at 8; 37 at 19, North Carolina's tort law applies to her claim of negligence.

#### 2. Application of North Carolina Law

Amtrak does not dispute that it has a duty to provide for the safety of its passengers. ECF No. 37 at 21; *see also*

5

*Bridges v. Parrish*, 742 S.E.2d 794, 797 (N.C. 2013) ("[C]ommon carriers owe a duty to provide for the safe conveyance of their passengers as far as human care and foresight can go.") (citation omitted). But there is more to a negligence claim than mere duty.

Whether a duty was breached is a question for the jury. Under North Carolina law, "[s]ummary judgment is rarely appropriate in negligence actions because ordinarily it is the duty of the jury to apply the standard of care of a reasonably prudent person." *Bernick v. Jurden*, 293 S.E.2d 405, 415 (N.C. 1982). The evidence as presented could support a negligence claim. Therefore, the Court leaves that determination for the jury.

### C. Negligence Per Se

In her Brief in Opposition to Plaintiff's Motion for Summary Judgment, McCleod "determine[s] not to assert a claim for negligence per se based upon Amtrak's violations of the ADA." ECF No. 75 at 21 (emphasis omitted). Therefore, this Court finds that any claim for negligence per se has been abandoned.

### V. CONCLUSION

The Court **GRANTS** Amtrak's Motion to exclude the testimony of Ned Einstein, ECF No. 39, and **GRANTS** Amtrak's Motion to exclude the testimony of Robert Meizinger, ECF No. 41. The Court also **GRANTS** McCleod's Motion to exclude Jacqueline Clark and Laura Anderson from testifying as experts, ECF No. 44. Amtrak's Motion for Summary Judgment, ECF No. 37, is **GRANTED** with regard to McCleod's claim under the ADA, but **DENIED** with regard to McCleod's tort claim of negligence. McCleod has abandoned her claim of negligence per se.

The Court also **ORDERS** the parties to file a joint proposed pretrial order within 30 days.

This 17 day of September 2014.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

6